If an Employee reports being the victim of alleged criminal activity or observes criminal activity at work or at a work-related event and if a safety risks exists for an Employee or any other individual, immediately call 911 or airport police. If there is no immediate safety risk, immediately call the Safety & Security Hotline at (469) 603-0407 for guidance and direction. If an Employee needs immediate medical attention, call 911 or your local emergency number. If immediate medical attention is not necessary, the Employee should not be transported until directed to do so by Corporate Security.

For questions regarding these guidelines, contact the Vice President Safety & Security.

## 5.7 Infectious Disease Control Policy
**Revised: 05/11/2021**

Southwest Airlines will take proactive steps to protect Employees in the workplace in the event of an infectious disease outbreak. The purpose of this policy is to address Employee expectations in the event of an increase or an outbreak of non-common infectious diseases such as but not limited to COVID-19 (Coronavirus), SARS, tuberculosis, and avian flu.

The Southwest Airlines Disaster Response Plan outlines the Teams and associated tasks to respond to an event ranging in severity from an outbreak to a pandemic. In consultation with Senior Leadership, the Emergency Director will determine the activation of the Pandemic Emergency Response Plan and this policy. When activated, the Emergency Director and/or their designee will provide specific direction with respect to each measure below as well as the timeframe, all of which are subject to change. Specific directions with respect to this policy will be posted on SWALife and/or communicated to Leaders and/or Employees in other forms such as email, text messages, memorandums, and other notices.

Southwest Airlines' goal during an infectious disease outbreak is to ensure the Safety of our Employees as we strive to operate effectively; therefore Employee attendance/work continuation is expected. Unless otherwise notified, Southwest Airlines' normal attendance and leave policies will remain in place. In the event of closures (all or partial) to the HDQ campus including remote non-operational offices such as People Department offices and Governmental Affairs, Southwest Airlines will use the codes described in 11.5 Attendance Policy Relating to Headquarters and Other Non-Operational Facilities Closures. Information regarding closures will be communicated to Employees via Company email. In some instances, text messages may be sent through the automated notification system (to Employees who populate their cell phone numbers in SWALife). In the event of closures or partial closures of airports or other facilities such as Centers, Employees will be notified by their Leadership via the common communication method.

### Preventing the Spread of Infection in the Workplace

Southwest Airlines asks all Employees to cooperate in taking steps to reduce the transmission of infectious disease in the workplace. The Centers for Disease Control Prevention (CDC) recommends everyday preventive actions to help limit the spread of infectious diseases, including:

- Avoid close contact with people who are sick. Please refer to 5.8 Headquarters (HDQ) and Other Non-Operational Facilities Physical Distancing Guidelines During an Infectious Disease Outbreak.
- Avoid touching your eyes, nose, and mouth.
- Stay home when you are sick.
- Cover your cough or sneeze with a tissue, then throw the tissue in the trash.
- Clean and disinfect frequently touched objects and surfaces using a regular household cleaning spray or wipe.
- Follow the CDC's recommendations for using personal protective equipment such as masks, cloth face coverings, and gloves.
- Wash your hands often with soap and water for at least 20 seconds, especially after going to the bathroom; before eating; and after blowing your nose, coughing, or sneezing.

Employees who fail or refuse to comply with any of the above steps to reduce the transmission of infectious disease will be sent home without pay until such time as they are able to commit to these safety guidelines and perform these preventative actions. Repeated failure or refusal to comply with these preventive measures may also lead to discipline, up to and including termination.

As a Company, we are committed to actions to ensure all Southwest Airlines Employees do their part to protect each other from infection and exposure.

### Higher Risk Individuals

Southwest Airlines recognizes that there are those within our Employee population who may be at a higher risk of infection or complications during an infectious disease outbreak. Southwest Airlines recognizes the CDC's People Who Are at Increased Risk for Severe Illness list as a reference but not as an exhaustive list of who should be considered higher risk individuals.

During an infectious disease outbreak, Employees who are in a higher risk situation and would like to seek a reasonable accommodation in order to be able to safely perform their job are encouraged to work with their Leader and utilize resources found at Requesting a Workplace Accommodation. Employees in these higher risk situations may also refer to resources related to medical leaves of absence at Taking/Returning from Leave of Absence.

**Limiting Business and Leisure Travel**

Southwest Airlines will generally follow the CDC's Travel Health Notices and applicable orders from federal, state, and local authorities with respect to travel within and outside of the United States. In accordance with the Travel Notices and orders from federal, state, and local authorities, the Company may ban or limit nonessential business travel. At times, guidelines that are stricter than the CDC Travel Notices and orders from federal, state, and local authorities may be instituted. Employees who travel as an essential part of their job should consult frequently with their Leader on appropriate actions. Employees are expected to also follow CDC Travel Notices, orders from federal, state, and local authorities, and Company direction when traveling for leisure.

**Staying Home When Ill**

Many times, with the best intentions, Employees report to work even though they are presenting signs and symptoms of illness. Under the Time Off Program and collective bargaining agreements, Southwest Airlines provides Sick Pay, Paid Time Off ("PTO"), and other benefits to compensate Employees who are unable to work due to illness. Refer to 11.4.1 Illness and 11.7 Time Off Program. Especially during an infectious disease outbreak, it is critical that Employees not report to work while they are ill and/or experiencing symptoms of the outbreak, such as fever, cough, shortness of breath, sore throat, runny or stuffy nose, body aches, headache, chills and fatigue. Employees are encouraged to call their health care provider if they suspect that they are ill with an infectious disease. Unless instructed otherwise by the Emergency Director or the Department Head, Employees who are ill and/or experiencing symptoms must comply with attendance reporting and documentation requirements in their respective departments.

Currently, the CDC provides recommendations regarding how long individuals with infectious diseases should remain quarantined. If you have flu-like symptoms during an outbreak of non-common infectious diseases, it is important to speak to your health care provider. Leaders have the authority to send an Employee home who is ill and/or exhibiting symptoms.

In order to prevent the spread of the infectious disease during any period in which this Infectious Disease Control Policy has been activated, if an Employee has complied with the Emergency Director's instructions under this policy and has a medically confirmed diagnosis of the infectious disease and is considered contagious according to the CDC, Southwest Airlines may continue to pay the Employee for all or a portion of scheduled hours/shifts/trips missed without reducing the Employee's Sick Pay Hours, Paid Time Off or 2016 Paid Sick Hour balances and without the Employee incurring any infraction under attendance control policies. Such regular pay will be considered eligible compensation for purposes of ProfitSharing and Company 401(k) contributions per the terms of the plan documents. Should the Employee's illness extend beyond the contagious period or is complicated by other conditions, Southwest Airlines' leave policies and collective bargaining agreements will apply.

**Reporting, Quarantine, and Pay**

Based on potential exposure to an infectious disease, Employees may be required to report such exposure/illness to their Leader and may quarantine after travel or potential exposure based on CDC recommendations or guidance.

The Company will publish specific directions to Employees and Leaders regarding reporting requirements which could include those:
- traveling from impacted areas
- experiencing symptoms
- who have been confirmed, or in close contact with someone confirmed of a pandemic-related illness

Quarantine during an outbreak of non-common infectious diseases **may be** required under the following conditions:
1. Employees have traveled during the quarantine period (for example, in the last 14 days) to regions listed on the CDC's Travel Index for the disease (or are part of a group of people the CDC or other government authorities require or recommend should be quarantined);
2. Employees have been informed by public health officials or health care providers that they are suspected of or confirmed to have the disease;
3. Employees have been in close contact (as defined by the CDC or the Emergency Director) with an individual who has been informed by public health officials or health care providers that they have the disease; or
4. Any other circumstances identified by the Emergency Director and/or that, in the Company's discretion, are in the best interest of the safety of our Employees and Passengers.

If an Employee has complied with the Emergency Director's instructions issued under this policy, but must quarantine at CDC direction or Southwest Airlines direction, the Company may continue to pay the Employee for all or a portion of scheduled hours/shifts/trips missed during quarantine and all regular pay during quarantine will be considered eligible compensation for purposes of ProfitSharing and Company 401(k) contributions per the terms of the plan documents. This time missed under required quarantine will not be considered infractions under attendance control policies. Additionally, for those Employees eligible, the time missed during quarantine will count toward the accrual of Paid Time Off. Employees covered by a collective bargaining agreement may have other coverage provided and they should consult with their Leader.

Unless otherwise required by applicable law, Employees who elect self-quarantine and/or isolation outside of the Emergency Director's instruction will not be paid and must work with their Leader and follow department or collective bargaining agreement requirements for shift or trip coverage, requesting Sick Pay, Paid Time Off, or working from home if eligible based on the Employee's specific job. Attendance control policies will apply.

### Vaccines

Following guidance from the CDC and state and local health authorities, Southwest Airlines may implement measures related to available vaccines during an infectious disease outbreak or public health emergency. Southwest Airlines reserves the right to mandate vaccines in accordance with applicable laws and regulations. Whether or not vaccines are mandated, Southwest Airlines will provide additional guidance regarding cost-sharing, availability, prioritization, and reporting requirements including any request for proof of vaccination. Time off from work, payroll, and other administrative items related to vaccines will generally be handled under normal policies, department procedures, and provisions under Collective Bargaining Agreements.

### Additional Measures

Southwest Airlines may implement additional measures to minimize the spread of disease including activating policies such as 5.8 Headquarters (HDQ) and Other Non-Operational Facilities Physical Distancing Guidelines During an Infectious Disease Outbreak, The Southwest Promise, and the Southwest Airlines Face Coverings Policy.

### Failure to Comply

Employees who are found in violation of this policy including instructions issued by the Emergency Director and/or made available on SWALife or in other communications or notices, will be subject to disciplinary action, up to and including termination of employment.

## 5.8 Headquarters (HDQ) and Other Non-Operational Facilities Physical Distancing Guidelines During an Infectious Disease Outbreak
**Revised: 06/03/2021**

Facilities on HDQ campus include HDQ, TOPS, Wings, the LEAD Center, Technical Services, Dallas Technical Operations, Maintenance Training Center, FTC South, the Data Center, the Seelcco warehouse, and Seelcco miscellaneous facilities. In the event of an infectious disease outbreak and in coordination with the 5.7 Infectious Disease Control Policy, Southwest Airlines may implement physical distancing requirements and guidelines to minimize the spread of the disease within the HDQ campus and other non-operational facilities.

Masks and physical distancing are optional for Employees who are fully vaccinated against COVID-19 as defined by the Center for Disease Control (CDC). In general, people are considered fully vaccinated two weeks after their second dose in a two-dose series, such as the Pfizer or Moderna vaccines, or two weeks after a single-dose vaccine, such as Johnson & Johnson's Janssen vaccine. Employees who do not meet these requirements, are NOT fully vaccinated and must continue to wear a mask while on campus and maintain physical distance where possible.

### Acceptable Forms of Masks

A properly worn mask completely covers the nose and mouth, is secured to the head with ties, ear loops, or elastic bands that go behind the head, and fits snugly against the side of the face. Cloth masks should be made with two or more layers of a washable, breathable fabric. Neck gaiters (also called multi-bands) may be worn as masks as long as they have two layers of fabric or may be folded to make two layers and cover the nose and mouth and are secured under the chin.

In addition to the requirements noted above, the following are acceptable:
- Clear masks or cloth masks with a clear plastic panel to facilitate communication with people who are hearing impaired or others who need to see a speaker's mouth to understand speech
- Medical masks and N95 respirators

The following are some examples of coverings that are not acceptable:
- Masks not made of a solid piece of material, including those with slits, exhalation valves, or punctures
- Face shields (face shields may be worn in addition to a mask that meets the above required attributes)
- Bandanas, scarves, ski masks, or balaclavas
- Shirt or sweater collars (e.g., turtleneck collars) pulled up over the mouth and nose
- Masks made from a single layer or thin fabric that don't block light
- Masks that do not fit properly (large gaps, too loose or too tight)

## Read and Acknowledge the Southwest Airlines Employee Self-Declaration

The Southwest Airlines Employee Self-Declaration sets forth minimum standards allowing Employees to enter the workplace and empowers Employees to take personal accountability for keeping our Customers and Cohearts as healthy as possible. The Self-Declaration signage is posted at entrances to Corporate Campus facilities.



**VIA EMAIL**

August 11, 2021

Captain Bob Waltz
Vice President, Flight Operations
Southwest Airlines Co.
2702 Love Field Drive
Dallas, TX 75235

   Re:  **Negotiations Demand for Mandatory Working Conditions and Pay Changes**

Dear Bob,

Since the onslaught of the COVID-19 pandemic, SWAPA has made its position clear that pilot rates of pay, rules and working conditions, if impacted by COVID, must be negotiated by the parties. We reserved our legal objections and continued to hold the Company to its obligations to provide a safe and healthy work environment for our membership. While other airlines have all reached agreements with their respective pilot unions, Southwest labor relations has failed in that endeavor. The 1,000 swag point "incentive" unquestionably has been less impactful than the true incentives negotiated by the other airlines with their unions. As we now face the rise of the Delta variant crisis, this will prove significant.

With recent news that United Airlines is mandating the COVID vaccine for its employees, it is time for us to sit down and understand, among other things, if there will be such a sea change at Southwest. Sure, Gary's Newsline from August 9th said "no change" on mandating vaccines, but that clearly is not set in stone, as Gary then walked it back with the airline is "continually evaluating the effects of the pandemic." The Company's mandatory working conditions and pay changes, including mandatory vaccines and mandatory quarantines, must be negotiated with labor and codified.

As you know, the current Collective Bargaining Agreement has continued in effect after September 30, 2020, even as we have carried on negotiations to reach a new CBA pursuant to the Railway Labor Act's Section 6 dispute resolution process. *Detroit & T.S.L.R.R. v. UTU*, 396 U.S. 142, 149-53 (1969). Among other things, Section 6 of the RLA requires the parties to maintain *status quo* until a new agreement is reached, which means that rates of pay, rules and working conditions shall not be altered by the carrier until a new agreement is reached. *Id.* Mandatory quarantine and mandatory vaccination of the Pilot group constitute illegal unilateral action in violation of *status quo*. SWAPA stands ready to seek relief from the federal court if management takes such unilateral action and refuses to bargain.

Brookview Plaza | 1450 Empire Central Dr., Suite 737 | Dallas, TX 75247
Phone: 214-350-9237 | Tollfree: 800-969-7972 | Fax: 214-350-0647 | www.swapa.org

APP 34

August 11, 2021
Page 2

Again, a dedicated meeting to address the above is critical. Please let me know if that can be scheduled in the coming week. We prefer an in-person meeting and are happy to host or come to your offices.

Sincerely,

Captain Casey A. Murray
President

cc: Gary Kelly, Chief Executive Officer
Robert Jordan, Senior Vice President of Corporate Services
Alan Kasher, Executive Vice President of Daily Operations
Carl Kuwitzy, Director of Labor Relations
Captain Jody Reven, Negotiating Chairman

Brookview Plaza | 1450 Empire Central Dr., Suite 737 | Dallas, TX 75247
Phone: 214-350-9237 | Tollfree: 800-969-7972 | Fax: 214-350-0647 | www.swapa.org

APP 35



**Southwest Airlines Co.**
Bob Waltz
Vice President
Flight Operations
2195 Research Row Drive
Dallas, TX 75235
(469) 603-4338

August 21, 2021

<u>Via Email</u>

Captain Casey A. Murray
President Southwest Airlines Pilots Association
1450 Empire Central Drive
Suite 737
Dallas, Texas 74247

Dear Captain Murray,

Thank you for your August 11 letter asking for a meeting to discuss Southwest's COVID-19 vaccine stance. There are no current plans for Southwest to mandate the vaccine nor provide additional incentives to receive the vaccine above what has been offered. As a result, we do not have new information to share on that specific topic at this time.

Should our position change and we consider offering additional incentives and/or mandating vaccines, we will have a conversation with you about those topics.

We disagree with the statements in your letter that mandatory quarantine and mandatory vaccination of the Pilot group would require negotiation with SWAPA. The current CBA contains broad language granting management the right to unilaterally take action on those issues.

Nevertheless, we remain committed to our Pilots and working with SWAPA on issues regarding their health and welfare. We stand ready to discuss such concerns with you.

Thank you for your letter and affirming your position.

Sincerely,

*[signature]*

Bob Waltz

cc:  Kevin Minchey, Associate General Counsel
     Monty Sparks, Director Labor Administration
     Marsha Kinsley, Labor Administration Manager

**SWAPA**
SOUTHWEST AIRLINES PILOTS ASSOCIATION

**VIA EMAIL**

September 14, 2021

Captain Bob Waltz
Vice President, Flight Operations
Southwest Airlines Co.
2702 Love Field Drive
Dallas, TX 75235

Re:     Demand to Cease and Desist – Direct Negotiations with Union Membership

Dear Bob,

Under your leadership, Southwest Airlines has made a mockery of labor relations and the Company's legal obligations under the Railway Labor Act to bargain and reach agreement with SWAPA. The Pilot labor group is repulsed by your continued ignorance for what is in the best interest of both this airline and its Pilot work force in this pandemic, from trying to extort a 10% concession from labor to threatening to furlough 1,221 Pilots to making unilateral changes to our Pilots' working conditions, rules and pay. This afternoon, our Negotiating Chair Captain Jody Reven received a heads up from the Company's lead negotiator, Carl Kuwitzky, that the Company will be rolling out a "vaccine incentive program" tomorrow. This is news to us. This will be another unilateral action by management in violation of the RLA.

SWAPA served Southwest with a status quo lawsuit in U.S. District Court for the Northern District of Texas on August 31, 2021 on exactly this issue. In the last 2 weeks, our Negotiating Team had presented the Company with a proposed Vaccine Incentive MOU, but has yet to hear back substantively from you and Mr. Kuwitzky.

SWAPA hereby demands that you CEASE AND DESIST in rolling out any programs unilaterally that in any way impact our Pilots' working conditions, rules and pay.

The RLA provisions serve to "prevent the union from striking and management from doing anything that would justify a strike." *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 150 (1969). The Act expressly states that "[n]o carrier, its officers, or agents shall change the rates of pay, rules or working conditions of its employees, as a class, as embodied in agreements . . . ." 45 U.S.C. § 152 (2012). It also provides that carriers have the duty to bargain only with the union and not directly with employees. *Id*. The RLA strictly prohibits the carrier, by making unilateral changes in working conditions or interfering with the union's representation of its members, to gain an unbargained-for advantage against its counterpart union.

Brookview Plaza | 1450 Empire Central Dr., Suite 737 | Dallas, TX 75247
Phone: 214-350-9237 | Tollfree: 800-969-7972 | Fax: 214-350-0647 | www.swapa.org

September 14, 2021
Page 2

To roll out a program unilaterally under these circumstances is clear evidence of bad faith bargaining by the Company and de facto negotiating directly with SWAPA's membership, illegal under the RLA as the parties are in Section 6 negotiations.

We demand your written confirmation that the program being rolled out tomorrow does not pertain to the Pilot group. Without that written confirmation, SWAPA will be forced to seek punitive damages in our federal lawsuit, along with other affirmative protections by the court.

Very truly yours,

Captain Casey Murray
President

cc: Gary Kelly, Chief Executive Officer
Robert Jordan, Senior Vice President of Corporate Services
Alan Kasher, Executive Vice President of Daily Operations
Carl Kuwitzy, Director of Labor Relations
Juan Suarez, Esq.
Captain Jody Reven, Negotiating Chairman
K. Helen Yu, General Counsel

Brookview Plaza | 1450 Empire Central Dr., Suite 737 | Dallas, TX 75247
Phone: 214-350-9237 | Tollfree: 800-969-7972 | Fax: 214-350-0647 | www.swapa.org

APP 38



Southwest Airlines Co.
Bob Waltz
Vice President
Flight Operations
2195 Research Row Drive
Dallas, TX 75235
(469) 603-4338

September 17, 2021

<u>Via Email</u>

Captain Casey A. Murray
President Southwest Airlines Pilots Association
1450 Empire Central Drive
Suite 737
Dallas, Texas 74247

Dear Casey,

I received your letter dated September 14, 2021. During this very fluid situation, events are moving fast. We share a common goal—protecting the health and welfare of our Pilots (and all of our Employees).

The Company has introduced a Vaccination Participation Pay Program (VPPP) to incentivize its Employees to receive the COVID-19 vaccinations. Employees who complete all rounds of a COVID-19 shot series, report their vaccination status, and upload their vaccination record card in WorkPerks by November 15 will receive 16 hours (or 13 TFP) of pay, which will be reflected on their December 20 paychecks. The goal of VPPP is to increase vaccination rates among Employees and incentivize individuals to report their vaccination. Our best line of defense against COVID-19 is getting as many Employees vaccinated as possible. The deadline of November 15 provides enough time for Employees to receive both rounds of a two-series vaccine or the one-dose vaccine.

As a reminder, this was all communicated to SWAPA on September 1, and again on September 14. The general terms outlined here are in alignment with our discussions to date around an incentive for vaccination.

It appears both sides could benefit from further dialog on the VPPP. Carl will reach out to set up a small group meeting for early next week. We look forward to the discussion.

Sincerely,

Bob Waltz

cc:  Gary Kelly, Chief Executive Officer
     Bob Jordan, Executive Vice President – Chairman & CEO
     Alan Kasher, Executive Vice President of Daily Operations
     Carl Kuwitzky, Senior Director Labor Relations
     Juan Suarez, Vice President Diversity & Inclusion
     Jody Reven, Negotiating Chairman
     Kevin Minchey, General Counsel
     K. Helen Yu, General Counsel



VIA EMAIL

October 3, 2021

Gary Kelly
Chief Executive Officer
Southwest Airlines Co.
2702 Love Field Drive
Dallas, TX 75235

Re: Demand to Cease and Desist – Status Quo Violations

Gary:

Demanding that Southwest Airlines cease and desist from unilateral action is now a weekly sport. The Association learned Friday afternoon that Management will be announcing a vaccine mandate imminently. Not only will a vaccine mandate contravene the "Vaccine Incentive Program" you rolled out two weeks ago, it will be a stark divergence from your repeated and public assurances to Southwest employees that the Company will not mandate the vaccine. While Management may have the leisure to mandate vaccines for at-will employees, that is not the case with the Pilot work group. Pilots are unionized. As such, Southwest Airlines is required to negotiate and make agreement with the Association before any modifications to Pilots' working conditions, rules, and pay may be made; not after. In mandating the vaccine, the Company is once again intentionally and willfully taking unilateral action against the Pilots and their CBA. That is an indefensible violation of the Railway Labor Act ("RLA"). SWAPA demands that that Southwest Airlines IMMEDIATELY CEASE AND DESIST from implementing a vaccine mandate on the Pilot work group unless and until such time that Management and Labor can reach agreement.

*Status quo* under the RLA must be maintained. "It shall be the duty of all carriers, their officers, agents and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions…." RLA, Section 2, First. This *status quo* duty has been deemed "the heart" of the RLA. *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377-378 (1969). It underscores the *status quo* provisions under Section 6, requiring that rates of pay, rules, and working conditions shall not be altered by the carrier until a new agreement is reached. *Detroit & T.S.L.R.R. v. UTU*, 396 U.S. 142, 149-53 (1969).

Your refusal to bargain over the vaccine mandate follows a long string of similar unilateral actions by the Company. Ironically, even the Vaccine Incentive Program was implemented without union agreement. This path of unilateral impositions by Management is neither sustainable nor legal. SWAPA has made repeated pleas to the Company for the parties to bargain over COVID-related issues to no avail. Southwest Airlines has made a farce out of the good faith bargaining imposed by both 45 U.S.C. § 152 and Section 1 of our CBA. Its specious use of the pandemic to make un-bargained for modifications to our CBA is nothing but bad faith.

Brookview Plaza | 1450 Empire Central Dr., Suite 737 | Dallas, TX 75247
Phone: 214-350-9237 | Tollfree: 800-969-7972 | Fax: 214-350-0647 | www.swapa.org

APP 40

SWAPA will be seeking to enjoin Southwest Airlines and pursue punitive damages for your deliberate attack on the union. Southwest Airlines does not operate above the RLA. Management must collectively bargain with SWAPA.

Yours truly,

Captain Casey Murray
President

cc: Robert Jordan, Senior Vice President of Corporate Services
Captain Alan Kasher, Executive Vice President of Daily Operations
Mark Shaw, Executive Vice President, Chief Legal and Regulatory Officer
Bob Waltz, Vice President of Flight Operations
Carl Kuwitzky, Director of Labor Relations
Captain Jody Reven, Negotiating Chairman
K. Helen Yu, General Counsel and Director of Diversity

Brookview Plaza | 1450 Empire Central Dr., Suite 737 | Dallas, TX 75247
Phone: 214-350-9237 | Tollfree: 800-969-7972 | Fax: 214-350-0647 | www.swapa.org

APP 41